IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

OLIVER HILSENRATH,

    Defendant.
                                           /

No. CR 03-00213 WHA

**ORDER DENYING MOTION TO MODIFY SPECIAL CONDITIONS OF PROBATION**

## INTRODUCTION

Defendant Oliver Hilsenrath brings this motion to modify the special conditions of his probation, claiming that the DNA-testing requirement violates his rights under the Religious Freedom Restoration Act ("RFRA"). Because DNA collection furthers a compelling government interest through the least-restrictive means, Mr. Hilsenrath's motion is **DENIED**.

## STATEMENT

Having spurned counsel and elected to represent himself, Mr. Hilsenrath pled guilty to securities fraud and tax evasion in 2007 and was sentenced to five years of probation. The DNA Analysis Backlog Elimination Act (the "DNA Act") established the Federal Convicted Offender Program and requires probation offices to collect a DNA sample from individuals who have been convicted of any felony. 42 U.S.C. 14135a(a)(2), (d). Because Mr. Hilsenrath pled guilty to at least one felony, the judgment of this Court required Mr. Hilsenrath to "cooperate in

the collection of DNA as directed by the probation officer" as a special condition of his probation (Dkt. 387).

In March of 2008, Mr. Hilsenrath, still acting pro se, moved to stay DNA testing, which had been scheduled for April 7. In his initial motion, Mr. Hilsenrath requested that the testing be stayed "pending the submission of a proper motion to the District Court to dismiss the . . . collection of DNA." In response, the government asked the Court to reject any constitutional challenges to the DNA testing but conceded that Mr. Hilsenrath should be allowed to brief a challenge under RFRA. In an order dated March 31, this Court postponed the DNA testing and directed Mr. Hilsenrath to brief his motion regarding the RFRA challenge. On April 7, Mr. Hilsenrath, who is Jewish, filed the instant motion to enjoin the DNA testing. The Court will construe it as a motion to modify special conditions of probation.

James Corcoran, a DNA Examiner assigned to the Federal Convicted Offender Program, testified in a sworn declaration about the government's methods of DNA collection. Besides requiring the collection of DNA samples, the DNA Act requires that the integrity of the DNA data be maintained in the National DNA Index System, of which the two main indexes are the Convicted Offender index and the Forensic Index. There are currently over 5.6 million DNA profiles in the Convicted Offender index and over 210,000 profiles in the Forensic index. These indexes help investigators link crime scenes together and identify possible perpetrators.

The FBI Director's Quality Assurance Standards governs DNA collection. The current standard procedure involves obtaining blood through a finger-prick test, which only draws six drops of blood. This is the *only* validated and approved means of obtaining DNA. Blood is the preferable collection method for numerous reasons. *First*, blood is collected by lay persons like probation officers and not by trained forensic professionals. A blood sample allows the collector to see whether a sufficient amount of DNA sample has been collected for analysis, whereas a buccal swab would not allow for the same kind of visual verification. *Second*, other means of DNA collection have a greater risk of environmental contamination. For example, buccal swabs are susceptible to bacterial contamination, mold growth, and personal hygiene problems, all of which can degrade the quality of the DNA sample.

2

1 Hair samples are impractical as well because they produce such inconsistent and small
2 quantities of nuclear DNA. *Third*, blood samples are collected on bloodstain cards, which are
3 easily archived for long-term storage with little degradation in the integrity of the sample.
4 *Fourth*, the FBI's current automated DNA profiling system is uniquely suited for the processing
5 of blood samples. Because of this system, the Federal Convicted Offender Program has been
6 able to increase the number of offender samples analyzed from 600 per month to over 10,000
7 per month. This cannot be done with alternative DNA samples, like hair.[1]

8 At the hearing on June 30, Mr. Hilsenrath was specifically asked if it would make any
9 difference whether his DNA was obtained by blood test or by buccal swab. He responded that
10 the manner of DNA collection did not matter; one method was the same as any other.
11 He objected to DNA collection altogether.

## ANALYSIS

13 The RFRA states that the "[g]overnment shall not substantially burden a person's
14 exercise of religion" unless the government uses the "least restrictive means" to further a
15 "compelling governmental interest." 42 U.S.C. 2000bb-1(a), (b). The Ninth Circuit has
16 explained that a defendant who challenges DNA testing under the RFRA must: "(1) articulate
17 the scope of his beliefs, (2) show that his beliefs are religious, (3) prove that his beliefs are
18 sincerely held and (4) establish that the exercise of his sincerely held religious beliefs is
19 substantially burdened." If the defendant establishes these elements, then the government must
20 show that the burden is nonetheless permissible because it furthers a compelling governmental
21 interest through the least restrictive means. *United States v. Zimmerman,* 514 F.3d 851, 853
22 (9th Cir. 2007).[2]

23 Under RFRA, a belief is "religious" in nature if it is "rooted in religious belief, not in
24 purely secular philosophical concerns." A defendant's beliefs need not be "central to a

---

[1] This order notes that there is a difference between DNA samples collected for the Federal Convicted Offender Program versus samples collected during the course of a criminal investigation. Drawing blood is the only FBI-validated means of collecting DNA for Federal Convicted Offender Program. Officers investigating a crime, however, must make do with whatever DNA samples they can find in the field (*e.g.*, blood, hair, saliva, semen).

[2] Unless otherwise indicated, internal citations have been omitted from all quoted authorities.

3

mainstream religion" nor "acceptable, logical, consistent, or comprehensible to others" in order to be deemed "religious" under the statute. Rather, a defendant's belief is religious if the person's belief is "based on his connection with God, not purely on secular philosophical concerns." *Id.* at 854. Thus, in *Zimmerman,* the Ninth Circuit vacated the decision of a district court that had concluded a defendant's belief was not religious because it was not central to a mainstream religion. 514 F. 3d at 853–54.

Mr. Hilsenrath contends that his religious beliefs prohibit the extraction of blood and the "imaging" of his DNA. He asserts that "[t]he Jewish faith states in no uncertain terms its disapproval of blood 'spilt' other than for the purpose of saving a life, or saving a soul" (Br. 3). Mr. Hilsenrath also asserts that his religious beliefs prohibit the "imaging" or "mapping" of his DNA (*id.* at 5):

> DNA is for all practical purpose the proxy of the *image of God* as implanted in each living being. As such it is protected from being imaged by the Second Commandment.

According to Mr. Hilsenrath, DNA testing would also violate the Third Commandment, which he says prohibits the taking of God's name or image in vain (*ibid.*).

The government concedes that Mr. Hilsenrath's opposition to blood extraction is religious and sincerely held. It is unclear, however, whether or not Hilsenrath's beliefs are substantially burdened by the collection of DNA. In the "Hilsenrath reply and statement against collection of DNA in violation of RFRA," Hilsenrath describes how his religious beliefs will be heavily burdened by his submitting to a blood test. He also says that the government cannot be trusted to protect his genetic information. This order assumes *arguendo* that Hilsenrath does face a substantial burden. The burden therefore shifts to the government to demonstrate that the burden is nonetheless permissible because (i) it furthers a compelling governmental interest (ii) through the least restrictive means. *Zimmerman*, 514 F.3d at 853.

This order finds that the government has met its burden. There are no decisions discussing whether or not the United States has a compelling interest in DNA collection when the defendant makes a RFRA challenge. There are, however, decisions addressing the government's interest in DNA collection within the context of Fourth Amendment challenges.

4

In *United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007), the Ninth Circuit held that requiring the defendant, a *nonviolent* offender, to comply with the DNA Act was constitutional "because the government's significant interest in identifying supervised releasees, preventing recidivism, and solving past crimes outweigh the diminished privacy interests that may be advanced by a convicted felon currently serving a term of supervised release." Hilsenrath says that the government's reliance on these decisions is misplaced because they dealt with situations in which people's lives were in danger. Not so. The court of appeals further stated in *Kriesel*, "In elaborating on those interests, the analysis did not distinguish as a practical matter between violent and nonviolent felons." *Id.* at 949. *See also United States v. Kincade*, 379 F.3d 813, 838 (9th Cir. 2004) ("[T]he interests furthered by the federal DNA Act are undeniably compelling").

      Judge David Levi, formerly of the Eastern District of California, concluded in one decision that the government had failed to demonstrate a compelling interest in the collection of DNA through a blood sample. This decision, however, is distinguishable, as discussed below. In *United States v. Holmes*, 2007 WL 529830 (E.D. Cal. 2007), defendant Elden Leroy Holmes argued under the RFRA that the government's requirement that he submit his DNA through a blood sample imposed a substantial burden upon his free exercise of religion. He believed that the extraction of blood violated a sacred relationship with God. He suggested that the government use a buccal swab instead. It must be emphasized that Holmes did *not* dispute that the government had a compelling interest in entering his DNA profile in the offender index system. He merely disputed the means of collection. Judge Levi agreed with the defendant, holding that the government had failed to "demonstrate a compelling interest in obtaining his DNA profile through a blood sample as opposed to a buccal-swab sample collected by an authorized State laboratory." *Id.* at * 3.

      Judge Levi therefore ordered Holmes to submit to a buccal swab test as the least-restrictive means. The defendant was to arrange for a state parole officer to obtain his DNA by buccal swab and upload it into the offender index. The order granting defendant's motion to dismiss the government's violation petition was contingent upon a successful upload.

5

After the state said that it did not have the authority to process Holmes' sample, the parties stipulated to having the FBI take the buccal swab. According to Mr. Corcoran's sworn declaration, the Federal Convicted Offender Program does not have a validated procedure for the analysis of buccal swabs. These samples are currently in cold storage until the Federal Convicted Offender Program has developed such a procedure. As a result, the results of Holmes' buccal swab test have never been analyzed.

The instant action is distinguishable from *Holmes*. As stated, Holmes had a narrower argument; he contended that the government did not have a compelling interest in collecting DNA *by blood rather than by buccal swab test*. He did not dispute that the government had a compelling interest in collecting his DNA. Mr. Hilsenrath, on the other hand, opposes the collection of *any* DNA, irrespective of the means. In light of the aforementioned Ninth Circuit and *Holmes* decisions, this order finds that the government has a compelling interest in collecting DNA from violent and nonviolent felons, even when the defendant has raised a RFRA challenge.

The last question is whether or not the government's method of obtaining DNA is the least restrictive means. This order finds that the government has met its burden. The government currently employs the finger-stick test, which only draws six drops of blood. The reason the FBI uses this test is because it must abide by the quality control standards mandated by the 1994 DNA Act, which requires labs to use only blood samples for processing and analyzing DNA. The FBI has not validated or approved the processing of any other type of DNA sample.

Given the current technology, a blood sample is the best means for obtaining DNA while being minimally invasive. It allows a collector to see whether he or she has collected a sufficient amount of DNA for analysis. In addition, the bloodstain cards are easily archived for long-term storage, have no appreciable degradation, and are amenable to the high-volume automation needed for processing the large number of DNA samples received. Other means of obtaining a DNA sample, such as buccal swabs or hair samples, are more easily contaminated

6

or produce inconsistent amounts of DNA. Accordingly, the government has met its burden in showing that blood collection is the least restrictive means to obtain DNA.

## CONCLUSION

For the foregoing reasons, Mr. Hilsenrath's motion to modify special conditions of his probation is **DENIED.** The probation office shall arrange for the blood-stick test within 30 calendar days and Mr. Hilsenrath shall so submit to the test. If an appeal is timely taken from this order, then the test shall be stayed so long as the appeal is pursued diligently.

**IT IS SO ORDERED.**

Dated: July 1, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7